**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant.* | Court No. 25-00004 |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW" or "Plaintiff"), by and through its undersigned attorneys, hereby files the instant complaint and alleges as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff contests certain aspects of the final determination issued by the U.S. Department of Commerce ("Commerce"), in its antidumping ("AD") investigation of truck and bus tires ("TBT") from Thailand. The final determination was published by Commerce in the Federal Register as *Truck and Bus Tires from Thailand: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part,* 89 Fed. Reg. 83,636 (Dep't Commerce Oct. 17, 2024) ("*Final Determination*"). The findings and conclusions of the contested determination are set forth in the accompanying *Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value*

*Investigation of Truck and Bus Tires from Thailand*, Inv. No. A-549-848 (Oct. 9, 2024) ("Issues and Decision Memo").

## JURSIDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). That section confers on the U.S. Court of International Trade jurisdiction to review final AD determinations issued by Commerce under Section 516A(a)(2)(A)(i) and (B)(i) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1516a(a)(2)(A)(i) and (B)(i).

## STANDING

3. The USW is a certified union which is representative of an industry engaged in the manufacture of the domestic like product in the United States. Consequently, the USW is an "interested party" as defined by 19 U.S.C. §§ 1516a(f)(3), 1677(9)(D). Additionally, the USW was the petitioner and actively participated in the AD investigation which resulted in the contested determination that is the subject of this appeal. Accordingly, the USW has standing pursuant to 19 U.S.C. § 1516a(d) as a party to the proceeding in connection with which this Complaint arises and is entitled to commence this action pursuant to 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

4. Section 516A(a)(2)(A)(i)(II) of the Act requires that, in actions challenging Commerce's determinations described in Section 516A(a)(2)(B)(i), the summons must be filed within thirty (30) days of the date of publication in the Federal Register of the AD order based upon the contested determination, and the complaint must be filed within thirty (30) days thereafter. *See* 19 U.S.C. § 1516a(a)(2)(A)(i). On January 8, 2025, within thirty (30) days of the publication of the AD order on December 17, 2024, the USW filed a summons with this Court. Within thirty (30) days thereafter, the USW is filing this Complaint. *See* U.S. Court of

International Trade Rule 6. Thus, this action is timely brought.

## STANDARD OF REVIEW

5. This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1673d to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

6. On October 17, 2023, the USW submitted an AD petition concerning unfairly traded imports of truck and bus tires from Thailand. *See Truck and Bus Tires From Thailand: Initiation of Less-Than-Fair-Value Investigation*, 88 Fed. Reg. 77,960 (Dep't Commerce Nov. 14, 2023). Commerce initiated the AD investigation on November 14, 2023. *Id.*

7. On December 4, 2023, Commerce selected Bridgestone Corporation and Prinx Chengshan Tire (Thailand) Co. Ltd. ("Prinx") as the mandatory respondents in the AD investigation.

8. On May 20, 2024, Commerce published in the Federal Register its preliminary affirmative determination in the AD investigation of truck and bus tires from Thailand.

9. On September 16, 2024, the USW, Bridgestone and Prinx filed case briefs with Commerce requesting that changes be made to certain aspects of the preliminary affirmative determination. On September 20, 2024, the parties submitted rebuttal briefs.

10. On October 17, 2024, Commerce published its final affirmative AD determination in the Federal Register. *See Final Determination*.

11. On December 17, 2024, based on the final determination, Commerce published the AD order on truck and bus tires from Thailand. *See Truck and Bus Tires From Thailand: Antidumping Duty Order*, 89 Fed. Reg. 102,111 (Dep't Commerce Dec. 17, 2024).

## CLAIMS AND BASES FOR RELIEF

### COUNT ONE

12. Plaintiff hereby incorporates by reference paragraphs 1 through 11 of this Complaint.

13. When calculating a respondent's constructed value, Commerce calculates the respondent's financial expense ratio, or INTEX, which represents the cost of borrowed capital. For respondents like Prinx that are subsidiaries within a consolidated group of companies, Commerce's practice is to calculate INTEX based on the audited financial statements of the company at the highest level of consolidation available. However, Commerce does not rely on the financial statements of companies operating in non-market economies ("NME").

14. In its response to Commerce's initial antidumping questionnaire, Prinx attempted to report its financial expense ratio on the basis of an NME entity. In a supplemental antidumping questionnaire, Commerce instructed Prinx to revise this reporting and to calculate INTEX using the financial statements of a market-economy entity. In its subsequent response, Prinx again attempted to report its financial expense ratio on the basis of a different NME entity's financial statements, falsely claiming that it was a market-economy entity.

15. The USW demonstrated in its case brief that Prinx had ignored Commerce's clear instruction and was attempting to pass off an NME entity as a market-economy entity, despite clear record evidence to the contrary. Because Prinx failed to cooperate with Commerce's instructions to the best of its ability, the USW requested that Commerce calculate Prinx's INTEX using partial facts available with an adverse inference ("AFA"). As AFA, the USW requested the doubling of the reported INTEX for Bridgestone, the other mandatory respondent in the investigation.

16. In its final determination, Commerce agreed that Prinx's reported INTEX calculation was based on the financial statements of an NME entity. This entity therefore could not serve as the basis for Prinx's INTEX. However, Commerce declined to apply AFA to calculate Prinx's financial expense ratio. Instead, it used Prinx's own financial statements. Thus, despite Prinx's clear failure to cooperate to the best of its ability with Commerce's instruction to report its financial expense ratio on the basis of a market economy entity, Commerce calculated Prinx's INTEX using neutral facts available rather than adverse facts available. Commerce thus ignored the purpose of the AFA statute to create an inducement for respondents to cooperate to the best of their ability.

17. Commerce's decision to calculate Prinx's INTEX using facts otherwise available without an adverse inference is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT TWO

18. Plaintiff hereby incorporates by reference paragraphs 1 through 17 of this Complaint.

19. Commerce's initial antidumping questionnaire instructed Prinx to report the unit cost of warranty expenses it incurred in the U.S. market during the period of investigation. During Commerce's verification of Prinx's reported U.S. sales expenses, Commerce found that Prinx failed to report a warranty claim expense granted to a U.S. customer. Because of this reporting failure, the per-unit cost of warranty expenses applicable to Prinx's U.S. sales was missing from the record.

20. In its case brief, the USW argued that Prinx had failed to cooperate to the best of its ability with Commerce's request for information. Therefore, the USW argued that Commerce

should apply partial AFA to Prinx's warranty expenses by dividing the unreported warranty expense amount by the total gross value of Prinx's sales to the customer in question, and then apply the resulting expense ratio to all of Prinx's U.S. sales.

21. In its final determination, Commerce continued to find that Prinx had failed to report a warranty claim expense granted to a U.S. customer and found that the per-unit cost of such expenses was missing from the record, requiring the use of facts otherwise available. Commerce additionally found that Prinx failed to cooperate to the best of its ability to comply with the antidumping questionnaire's request for information about its warranty claims, justifying the use of an adverse inference in selecting from facts otherwise available.

22. However, the facts that Commerce chose to use were not actually adverse to Prinx. Commerce only increased Prinx's warranty claim expenses by the amount of the unreported expense to the single customer. This increase is a neutral adjustment that corrects a reporting failure in a manner that was not adverse to Prinx. Commerce thus ignored the purpose of the AFA statute to create an inducement for respondents to cooperate to the best of their ability.

23. Commerce's failure to calculate Prinx's warranty expenses in a manner that was actually adverse to Prinx, despite determining that Prinx had failed to cooperate to the best of its ability with Commerce's requests, is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT THREE

24. Plaintiff hereby incorporates by reference paragraphs 18 through 23 of this Complaint.

25. Commerce's initial antidumping questionnaire directed Prinx to report the unit

cost of direct selling expenses incurred on sales of subject merchandise. During Commerce's verification of Prinx's reported U.S. sales expenses, Commerce found that Prinx failed to report certain bank charges incurred to facilitate payments from a U.S. customer.

26. Commerce's final determination found that Prinx's treatment of the bank charges was distortive and ignored the antidumping questionnaire's instructions. Commerce therefore determined that Prinx had failed to cooperate to the best of its ability to comply with Commerce's instructions and that the application of partial AFA was warranted for the calculation of Prinx's direct selling expenses.

27. However, as partial AFA, Commerce merely increased Prinx's direct selling expense by the amount of the unreported expense to the single customer. Commerce again made a neutral adjustment that was not adverse to Prinx instead of applying AFA, disregarding the purpose of the AFA statute to create an inducement for respondents to cooperate to the best of their ability.

28. Commerce's failure to calculate Prinx's warranty expenses in a manner that was adverse to Prinx, despite determining that Prinx had failed to cooperate to the best of its ability with Commerce's requests, is unsupported by substantial evidence and otherwise not in accordance with law.

## REQUEST FOR JUDGMENT AND RELIEF

29. Wherefore, the USW respectfully requests that this Court:

   a. hold and declare that the aspects of Commerce's *Final Determination* described herein are unsupported by substantial evidence on the record or otherwise not in accordance with law;

   b. remand this case to Commerce for disposition consistent with the decision of this Court; and

   c. provide such other relief as this Court deems just and appropriate.

                                        Respectfully submitted,

                                        <u>/s/ Luke A. Meisner</u>
                                        Roger B. Schagrin
                                        Luke A. Meisner
                                        Saad Y. Chalchal\*
                                        Nicholas C. Phillips\*\*

                                        **SCHAGRIN ASSOCIATES**
                                        900 7th Street, N.W.
                                        Suite 500
                                        Washington, DC 20001
                                        (202) 223-1700

                                        *Counsel to USW*

Dated: February 7, 2025

                                        \*Admitted only in New York and New Jersey. Practice limited to matters before federal courts and agencies.
                                        \*\* Admitted only in New York. Practice limited to matters before federal courts and agencies.

# PUBLIC CERTIFICATE OF SERVICE
## Truck and Bus Tires from Thailand from the People's Republic of China
### A-549-848
### Investigation
### CIT: 25-00004

The undersigned hereby certifies that a copy of the foregoing Complaint was served upon the following parties by Certified and Return Receipt Mail on February 7, 2025

**UPON THE UNITED STATES:**
Attorney General of the United States
Attorney-in-Charge
International Trade Field Office
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Supervision Attorney
Commercial Litigation Branch Civil Division
U.S. Department of Justice P.O. Box 480
Ben Franklin Station
Washington, DC 20044

**UPON THE DEPARTMENT OF COMMERCE:**
Robert Heilferty, Esq.
Chief Counsel
Office of the Chief Counsel for Trade Enforcement and Compliance International Trade Administration
U.S. Department of Commerce
14th Street and Constitution Ave., NW
Washington, DC 20230

**UPON INTERESTED PARTIES:**
APO Service List (A-549-848)
Truck and Bus Tires From Thailand
INV – Investigation

Sarah M. Wyss, Esq.
Representative of American Omni Trading Company, LLC
Mowry & Grimson PLLC
5335 Wisconsin Avenue, NW Suite 810
Washington, DC 20015
202-688-3610
smw@mowrygrimson.com

Jonathan M. Freed, Esq.
Representative of Zhongce Rubber (Thailand) Co., Ltd., Otani Radial Company Limited, Deestone Corporation Public Company Limited
Trade Pacific PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, DC 20003
202-223-3760
jfreed@tradepacificlaw.com

Daniel L. Porter, Esq.
Representative of China Manufacturers Alliance, LLC, Huayi Group (Thailand) Company Limited
Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW
Washington, DC 20006
202-452-7373
dporter@curtis.com

J. Kevin Horgan, Esq.
Representative of The Carlstar Group LLC
deKieffer & Horgan
1156 15th Street, NW Suite 1101
Washington, DC 20005
202-783-6900
khorgan@dhlaw.com

Matthew R. Nicely, Esq.
Representative of Unicorn Tire Corp
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006-1037
202-887-4046
mnicely@akingump.com

R. Kevin Williams, Esq.
Representative of Lionshead Specialty Tire & Wheel LLC
Clark Hill PLC
130 E. Randolph Street, Suite 3900
Chicago, IL 60601
312-985-5900
kwilliams@clarkhill.com

Brandon Petelin, Esq.
Representative of Prinx Chengshan Tire (Thailand) Co., Ltd. and Sentury Tire (Thailand) Co., Ltd., Prinx Chengshan Tire North America and Sentury Tire USA Inc.
Grunfeld Desiderio Lebowitz Silverman Klestadt, LLP
1201 New York Ave NW Suite 650
Washington DC 20005
202-783-6881
bpetelin@gdlsk.com

                                                                       */s/ Luke A. Mesiner*
                                                                      Luke A. Mesiner