**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

|  |  |  |
|---|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, AND CLC, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Court No. 25-00004 |
| v. | ) ) | ██████████████████ |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

---

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

AYAT MUJAIS
Assistant Chief Counsel
Office of the Chief Counsel
  for Trade Enforcement & Compliance
U.S. Department of Commerce

SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-7568
Fax: (202) 307-0972
Email: sosun.bae@usdoj.gov

December 23, 2025

Attorneys for Defendant

## TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2.................................................................2

    I.    The Administrative Determination Under Review.................................................2

    II.    Issue Presented.................................................................................................2

STATEMENT OF FACTS .................................................................................................2

SUMMARY OF THE ARGUMENT...................................................................................5

ARGUMENT.....................................................................................................................6

    I.    Standard of Review .........................................................................................6

    II.    Commerce's Application of Facts Otherwise Available to Prinx, Without an Adverse Inference, Was Supported by Substantial Evidence and in Accordance with Law................................................................................................................7

        A.  Relevant Legal Background for Application of Facts Available with an Adverse Inference.........................................................................................7

        B.  Notwithstanding USW's Contentions to the Contrary, Commerce Was Not Required to Apply an Adverse Inference to Prinx...........................................9

CONCLUSION.................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*AK Steel Corp. v. United States,*
    346 F. Supp. 2d 1348 (Ct. Int'l Trade 2004)................................................................ 10, 11

*Apex Frozen Foods Private Ltd. v. United States,*
    862 F.3d 1337 (Fed. Cir. 2017)........................................................................................ 12

*Appvion, Inc. v. United States,*
    100 F. Supp. 3d 1374 (Ct. Int'l Trade 2015)................................................................... 11

*Consolidated Edison Co. v. NLRB,*
    305 U.S. 197 (1938)........................................................................................................... 6

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966)........................................................................................................... 6

*Doe v. United States,*
    463 F.3d 1314 (Fed. Cir. 2006).......................................................................................... 9

*Dorbest Ltd. v. United States,*
    462 F. Supp. 2d 1262 (Ct. Int'l Trade 2006).................................................................... 10

*Essar Steel Ltd. v. United States,*
    678 F.3d 1268 (Fed. Cir. 2012).......................................................................................... 7

*Goldlink Indus. Co. v. United States,*
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006)...................................................................... 7

*Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States,*
    No. 23-00131, --- F. Supp. 3d ----, 2025 WL 2828839 (Ct. Int'l Trade Oct 6., 2025), *appeal
    docketed*, No. 26-1229 (Fed. Cir. Dec. 9, 2025)............................................................... 10

*Nippon Steel Corp. v. United States,*
    458 F.3d 1345 (Fed. Cir. 2006).......................................................................................... 7

*Nippon Steel v United States,*
    337 F.3d (Fed. Cir. 2003)................................................................................................... 8

*NSK Ltd. v. United States,*
    481 F.3d 1355 (Fed. Cir. 2007).......................................................................................... 9

*NTN Bearing Corp. of Am. v. United States,*
    295 F.3d 1263 (Fed. Cir. 2002).......................................................................................... 8

*NTN Corp. v. United States,*
   306 F. Supp. 2d 1319 (Ct. Int'l Trade 2004) ..................................................... 9, 10

*PAM, S.p.A. v. United States,*
   582 F.3d 1336 (Fed. Cir. 2009) ........................................................................... 11

*PSC VSMPO-Avisma Corp. v. United States,*
   688 F.3d 751 (Fed. Cir. 2012) .............................................................................. 7

*Ta Chen Stainless Steel Pipe, Inc. v. United States,*
   298 F.3d 1330 (Fed. Cir. 2002) ......................................................................... 10

*Timken Co. v. United States,*
   699 F. Supp. 300 (Ct. Int'l Trade 1988) .............................................................. 7

**Statutes**

19 U.S.C. § 1516a(b) ............................................................................................... 6

19 U.S.C. § 1677b(e) ............................................................................................... 3

19 U.S.C. § 1677e(a) ........................................................................................... 8, 10

19 U.S.C. § 1677e(b) ...................................................................................... 8, 10, 11

19 U.S.C. § 1677m(d) ......................................................................................... 9, 13

19 U.S.C. § 1677m(e) ............................................................................................... 8

**Rules**

Ct. Int'l Trade R. 56.2 ............................................................................................. 1

**Administrative Determinations**

*Seamless Refined Copper Pipe and Tube from Mexico,*
   80 Fed. Reg. 33,482 (Dep't of Commerce June 12, 2015), and accompanying IDM ........ 11, 12

*Truck and Bus Tires from Thailand,*
   88 Fed. Reg. 77,960 (Dep't of Commerce Nov. 14, 2023) ..................................... 2

*Truck and Bus Tires from Thailand,*
  89 Fed. Reg. 43,806 (Dep't of Commerce May 20, 2024), accompanying Preliminary Issues
  and Decision Memorandum ........................................................................................... 2, 3

*Truck and Bus Tires from Thailand,*
  89 Fed. Reg. 83,636 (Dep't of Commerce Oct. 17, 2024), and accompanying Issues and
  Decision Memorandum ..................................................................................... *passim*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

_____ )
UNITED STEEL, PAPER AND FORESTRY,       )
RUBBER, MANUFACTURING, ENERGY,          )
ALLIED INDUSTRIAL AND SERVICE           )
WORKERS INTERNATIONAL UNION,            )
AFL-CIO, AND CLC,                       )
                                        )
                                        )
              Plaintiff,                )        Court No. 25-00004
                                        )
       v.                               )
                                        )
UNITED STATES,                          )
                                        )
              Defendant.                )
                                        )
_____ )

## <u>ORDER</u>

Upon consideration of plaintiff's motion for judgment upon the agency record and

defendant's response thereto, plaintiff's reply, the administrative record, and all other pertinent

papers, it is hereby

ORDERED that plaintiff's motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained; and it is

further

ORDERED that judgment is entered in favor of the United States.


Dated: _____, 2025                    _____
New York, NY                                   Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | | |
|---|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, AND CLC, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Court No. 25-00004 |
| v. | ) ) ) | ██████████████ |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, and CLC (USW).  *See* USW Br., ECF No. 32. USW challenges a single aspect of the Department of Commerce's (Commerce) final determination in its less-than-fair-value investigation of truck and bus tires from Thailand— Commerce's decision not to apply a partial adverse inference to mandatory respondent Prinx Chengshan Tire (Thailand) Co., Ltd. (Prinx) in calculating Prinx's dumping margin.  As we demonstrate below, Commerce's final determination is supported by substantial evidence and in accordance with law.  Accordingly, we respectfully request that the Court deny USW's motion and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

I.     The Administrative Determination Under Review

USW challenges Commerce's final determination in its less-than-fair-value investigation of truck and bus tires from Thailand. *See Truck and Bus Tires from Thailand,* 89 Fed. Reg. 83,636 (Dep't of Commerce Oct. 17, 2024) (final determination) (P.R. 297), and accompanying Issues and Decision Memorandum (IDM) (P.R. 290). The period of investigation is October 1, 2022, through September 30, 2023.

II.    Issue Presented

Whether Commerce's determination to apply facts available, *without* an adverse inference, in calculating Prinx's financial expense ratio was supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

On November 14, 2023, Commerce initiated a less-than-fair-value investigation of truck and bus tires from Thailand. *See Truck and Bus Tires from Thailand,* 88 Fed. Reg. 77,960 (Dep't of Commerce Nov. 14, 2023) (P.R. 56). Commerce selected Bridgestone Corporation and Prinx as mandatory respondents for the investigation. *See* Dec. 4, 2023 Respondent Selection Memo (P.R. 69) (C.R. 26). Commerce issued its initial questionnaire to Prinx on December 13, 2023. *See* Prinx Questionnaire (P.R. 77); *see also Truck and Bus Tires from Thailand,* 89 Fed. Reg. 43,806 (Dep't of Commerce May 20, 2024) (preliminary determination) (P.R. 233), and accompanying Preliminary Issues and Decision Memorandum at 2 (PDM) (P.R. 218). In its initial questionnaire, Commerce asked Prinx to report the per-unit next interest expense incurred in the INTEX field.[1]  Prinx Questionnaire at D-20.

---

[1]  The INTEX field represents a respondent's financial expense ratio. *See* Prinx Supp. Section D Questionnaire at 9 (P.R. 154, C.R. 331). The financial expense ratio relates to

Prinx timely submitted its Section D questionnaire response on February 5, 2024.  *See* Prinx Section D Resp. (P.R. 127, C.R. 178-196).  Because Commerce's practice is to calculate a respondent's financial expense ratio based on the audited financial statements of the company at the highest level of consolidation available, and Prinx is a subsidiary within a consolidated group of companies, Prinx reported its financial expense ratio based on the fiscal year (FY) 2022 consolidated financial statements of its parent company—██████████████████ ██████████.  IDM at 56; Prinx Section D Questionnaire Resp. at 30.

However, Commerce does not rely on the financial statements of companies operating in a non-market economy.  IDM at 56.  Because Prinx's parent company was located in and operated in ██████, a non-market economy, Commerce asked Prinx, in a supplemental questionnaire, to "clarify which company operating in a market economy represents the highest level of consolidation with respect to the results of {Prinx,}" and to provide a revised financial expense rate calculation based on the market economy financial statements at the highest consolidation level.  Prinx Supp. Section D Questionnaire at 9 (P.R. 154, C.R. 331).  In response, Prinx submitted a revised financial expense ratio based on the FY 2023 consolidated financial statements of ████████████████████████████████, a company ████████ ███████████████████████████████████████████████████ ████████████████████████  Prinx Supp. Section D Resp. at 12, Exh. SD-12.b (P.R. 184, C.R. 358, 384-385), Prinx Section A Resp. at Exh. A-6b-10_2 (P.R. 107-111, C.R. 55-85).

For its preliminary determination, Commerce relied on the revised financial expense ratio submitted by Prinx in its supplemental response and preliminary assigned Prinx a zero percent estimated dumping margin.  *See* Preliminary Determination, 89 Fed. Reg. at 43,807; IDM at 56.

---

Commerce's calculation of selling, general, and administrative expenses in determining constructed value.  19 U.S.C. § 1677b(e)(2)(B); *see also* USW Br. at 1.

Commerce then verified the calculation of the ratio during the cost verification of Prinx. *Id.*.  In its case brief, USW urged Commerce to apply facts available with a total adverse inference (AFA) to Prinx based on numerous alleged errors, including Prinx's alleged failure to comply with Commerce's instructions regarding the reporting of its financial expense ratio. *See* USW Case Br. at v-vi (P.R. 277, C.R. 563).  Specifically, USW challenged Prinx's reporting of ███ ██████ as the company operating in a market economy at the highest level of consolidation with Prinx, arguing that Commerce should either apply total AFA to Prinx or apply partial AFA with regard to the financial expense ratio. *Id.* at vi, 38-44.  On rebuttal, Prinx explained that ████████████ did operate in a market economy, as it was ████████████ ████████████████████████████████ ████████████████████████████████ ████. Prinx Rebuttal Case Br. at 25-26 (P.R. 279, C.R. 564).  Prinx also observed that USW did not challenge Prinx's submission of ██████████ until after the preliminary determination. *Id.*

In its final determination, Commerce, upon reexamining the record, found that while ████████████ consolidated financial statements were prepared in accordance with ███ ████████████████████ and the company was incorporated in ██████ ██████ other information on the record indicated that its principal place of business and address were both in █████ and that it had ████████████████████ ██████ Prinx Final Cost Calculation Memo at 2-3 (P.R. 293, C.R. 570).  As such, Commerce concluded that the company operated in a non-market economy and that its consolidated financial statements could not be used as the basis for Prinx's financial expense ratio calculation. *Id.*  Commerce thus relied on facts otherwise available and used Prinx's own

FY 2023 audited financial statements as the basis for the financial expense ratio calculation. *Id.*; *see also* IDM at 56.

Commerce, however, declined USW's invitation to apply an adverse inference to Prinx, stating that: (1) it did not agree that Bridgestone's financial expense ratio represented the best available information on the record, (2) using a respondent's own financial statements was consistent with prior proceedings involving similar fact patterns, and (3) in its supplemental response, Prinx had provided the company it contended was operating in a market economy. IDM at 56. While Commerce decided not to apply AFA to Prinx for the financial expense ratio, it did apply partial AFA with regard to certain other issues. *See* IDM at 40 (finding partial AFA appropriate with regard to reporting errors in warranty claims expenses, bank fees, and rebate programs). In declining to apply total AFA to Prinx (as USW had urged), Commerce explained that, for the majority of Prinx's submissions:

> Prinx cooperated with Commerce's numerous requests for information, provided the requested information by the established deadlines in the form and manner requested, provided information that was largely verifiable, and did not significantly impede Commerce's ability to timely and accurately conduct this investigation so as to warrant { } application of total AFA.

IDM at 41. Applying partial AFA to Prinx for the reporting errors, and facts available for the financial expense ratio, Commerce assigned an estimated dumping margin of 12.33 percent to Prinx. *See* Final Determination, 89 Fed. Reg. at 83,637.

## SUMMARY OF THE ARGUMENT

Commerce's decision not to apply a partial adverse inference to Prinx's reporting of its financial expense ratio calculation is lawful and supported by substantial evidence. This Court has held on numerous occasions that Commerce has broad discretion under the statutory scheme in deciding whether to apply an adverse inference, and USW cannot establish that Commerce

abused this broad discretion in applying facts available without an adverse inference or that Commerce's determination was unsupported by record evidence.

Given the nature of Commerce's supplemental questionnaire and Prinx's explanation, Commerce reasonably determined that Prinx had cooperated to the best of its ability to provide the information requested. Moreover, USW's allegation that Prinx submitted information for a company it knew to be a non-market economy entity is founded on little more than speculation. Contrary to USW's assertions, Commerce sufficiently explained its determination, explaining that it had relied on a respondent's own information as facts available in similar circumstances and that Prinx had cooperated with Commerce's requests for information, provided the requested information by the established deadlines in the form and manner requested, and did not significantly impede the proceeding. Accordingly, the Court should sustain the final determination.

## **ARGUMENT**

I.    Standard of Review

This Court holds lawful Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence" consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing two inconsistent conclusions from evidence upon the record does not render Commerce's findings unsupported by substantial evidence. *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Moreover, "the court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citation and quotation marks omitted) (emphasis in original omitted); *see also Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988) (explaining that it is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record"). Hence, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (internal quotation marks omitted).

Finally, "{t}he role of judicial review is limited to determining whether the record is adequate to support the administrative action." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761 (Fed. Cir. 2012); *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (reversing the Court's order instructing Commerce to consider extra-record information because "the trial court's order usurps agency power, undermines Commerce's ability to administer the statute entrusted to it, contradicts important principles of finality, and discourages compliance.").

II.    Commerce's Application of Facts Otherwise Available to Prinx, Without an Adverse Inference, Was Supported by Substantial Evidence and in Accordance with Law

    A.    Relevant Legal Background for Application of Facts Available with an Adverse Inference

Commerce will use "facts otherwise available" to fill gaps in the record if: (1) necessary information is not available, (2) an interested party withholds information requested by

Commerce or fails to provide the information by the deadline or in the manner requested, (3) the party significantly impedes the proceedings, or (4) the party provides information that cannot be verified. 19 U.S.C. § 1677e(a). If Commerce finds that a respondent failed to cooperate by not acting "to the best of its ability to comply with a request for information," it may also apply an adverse inference when selecting amongst facts otherwise available. 19 U.S.C. § 1677e(b). A respondent fails to act to the best of its ability when it does not exert "maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel v United States*, 337 F.3d at 1373, 1382 (Fed. Cir. 2003).

Importantly, Commerce enjoys broad discretion in determining whether to apply an adverse inference. Under the relevant statute, Commerce "shall" use facts otherwise available in reaching its determination when, among other factors, an interested party "withholds information that has been requested." 19 U.S.C. § 1677e(a)(2)(A). However, section 1677m(e) tempers this requirement, providing that information submitted by interested parties that "{d}oes not meet all of Commerce's applicable requirements, shall be considered by Commerce if the information is timely, it can be verified, it is sufficiently complete to be reliable, the interested party acted to the best of its ability in supplying the data, and the information may be used without difficulties or distortions." *NTN Bearing Corp. of Am. v. United States*, 295 F.3d 1263, 1268 (Fed. Cir. 2002).

In contrast to the requirement that Commerce "shall" use facts available if necessary information is not available, 19 U.S.C. § 1677e(b) provides that Commerce "may" use an adverse inference in selecting from facts otherwise available when it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b). As indicated by the word "may," "Commerce enjoys broad, although not unlimited, discretion with regard to the propriety of its use of facts

available." *NTN Corp. v. United States,* 306 F. Supp. 2d 1319, 1329 (Ct. Int'l Trade 2004); *see also Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006) ("There is a presumption that the use of the word 'may' in a statute creates discretion.").

Before Commerce can apply AFA on the basis of a deficient questionnaire response, Commerce must normally inform the respondent of the deficiency and, to the extent practicable, provide the respondent with an opportunity to rectify the deficiency. *See* 19 U.S.C. § 1677m(d). Commerce may satisfy this obligation by issuing a supplemental questionnaire notifying the respondent of the deficiency. *See NSK Ltd. v. United States*, 481 F.3d 1355, 1360 n.1 (Fed. Cir. 2007) ("Commerce . . . satisfied its obligations under section 1677m(d) when it issued a supplemental questionnaire specifically pointing out and requesting clarification of {the} deficient responses.").

B.    Notwithstanding USW's Contentions to the Contrary, Commerce Was Not Required to Apply an Adverse Inference to Prinx

In its final determination, Commerce reasonably applied facts otherwise available, *without* an adverse inference, to Prinx. Prinx initially submitted its financial expense ratio based on the consolidated financial statements of its parent company, then, in its response to Commerce's supplemental questionnaire, provided the financial statements of ███████ █████████, a company that Prinx asserted operated in a market economy at the highest level of consolidation. IDM at 56, Prinx Supp. Section D Resp. at 12, Prinx Rebuttal Br. at 25. Commerce preliminarily accepted these financial statements, then verified the calculation based on these statements during the cost verification. IDM at 56. Commerce, on finding in its final determination that it could not use ██████████████ financial statements for the financial ratio calculation, as the record evidence demonstrated that the company operated in a non-market economy country, determined to rely on facts available, but *not* to apply an adverse inference.

This determination was lawful, adequately explained, and supported by the record; USW cannot demonstrate otherwise, particularly in light of the broad discretion afforded to Commerce in deciding whether to apply an adverse inference.

As the Court of Appeals for the Federal Circuit has held, "{i}n the case of uncooperative respondents, the discretion granted by the statute appears to be particularly great{.}" *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1338-39 (Fed. Cir. 2002). This Court has likewise affirmed, on numerous occasions, Commerce's broad discretion over whether to apply an adverse inference. *See, e.g., Dorbest Ltd. v. United States*, 462 F. Supp. 2d 1262, 1317 (Ct. Int'l Trade 2006) ("that this authority is *discretionary* is manifested by section 1677e(b)'s use of the permissive term 'may,' which stands in contraposition to section 1677e(a)'s use of the *mandatory* term 'shall.'") (emphasis added) (citations omitted); *NTN Corp.*, 306 F. Supp. 2d at 1329; *AK Steel Corp. v. United States*, 346 F. Supp. 2d 1348, 1355 (Ct. Int'l Trade 2004). As this Court recently explained, "it makes sense that Commerce has discretion to determine whether to apply adverse inferences, as the agency is in the best position to decide whether a party has complied to its best ability with requests and to ascertain whether adverse inferences will likely yield the most accurate results." *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, No. 23-00131, --- F. Supp. 3d ----, 2025 WL 2828839, at *9 (Ct. Int'l Trade Oct 6., 2025), *appeal docketed*, No. 26-1229 (Fed. Cir. Dec. 9, 2025).

USW, while nominally acknowledging Commerce's broad discretion, *see* USW Br. at 12, relies on supposition regarding Prinx's motivation and knowledge, in conjunction with Commerce's purported lack of explanation, in claiming that Commerce's determination was unreasonable and unsupported by substantial evidence. These assertions lack merit.

As an initial matter, Commerce's broad discretion as to whether to apply an adverse inference "does not require that {it} show that an {interested party} cooperated to the best of its ability every time it determines that {facts available with an adverse inference} should not be applied." *Appvion, Inc. v. United States*, 100 F. Supp. 3d 1374, 1382 (Ct. Int'l Trade 2015) (citing *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339-40 (Fed. Cir. 2009)); *see also AK Steel*, 346 F. Supp. 2d at 1355 ("AK Steel apparently interprets *Nippon Steel* to require Commerce to prove that an importer cooperated to the best of its ability every time that the agency decides not to apply adverse facts available. This runs counter to the discretion afforded to Commerce by section 1677e(b) in the application of adverse facts available.").

In any event, USW's claim that "Commerce did not supply any reasoning for its decision" is belied by the final determination. USW Br. at 14. First, Commerce observed that Prinx had submitted information for the company it maintained both operated in a market economy and represented the highest level of consolidation with regard to Prinx. IDM at 56. Commerce also identified record information supporting Prinx's position, finding that ███ █████████ financial statements are prepared in accordance with ███████████ ████████████████ and that the company was incorporated in █████████████. Prinx Final Cost Calculation Memo at 2-3 (P.R. 293, C.R. 570).

Commerce also explained that using Prinx's own financial statement for calculating the final expense ratio was consistent with prior proceedings involving similar fact patterns. IDM at 56 (citing *Seamless Refined Copper Pipe and Tube from Mexico*, 80 Fed. Reg. 33,482 (Dep't of Commerce June 12, 2015), and accompanying IDM at Cmt. 3) (*Seamless Pipe and Tube from Mexico*). Indeed, in *Seamless Pipe and Tube from Mexico*, Commerce explained that it would not use the parent company's financial statements for calculating the interest expense ratio

because that company operated in China, a non-market economy. *Seamless Pipe and Tube from Mexico* IDM at 12. Instead, as here, Commerce relied on the financial statements of the producer. *Id.*

Finally, in rejecting USW's request for Commerce to apply total AFA to Prinx based on numerous issues, including Prinx's reporting of ███████████ for its financial expense ratio, Commerce explicitly found that "Prinx cooperated to the best of its ability to provide the information requested," explaining that, other than with regard to a few discrete issues for which Commerce applied partial AFA:

> Prinx cooperated with Commerce's numerous requests for information, provided the requested information by the established deadlines in the form and manner requested, provided information that was largely verifiable, and did not significantly impede Commerce's ability to timely and accurately conduct this investigation so as to warrant { } application of total AFA.

IDM at 41. Commerce's path need only be reasonably discernible for its decision to be upheld, and USW cannot demonstrate that it is not so. *See Apex Frozen Foods Private Ltd. v. United States*, 862 F.3d 1337, 1347 (Fed. Cir. 2017) ("A court is not to substitute its judgment for that of the agency, and should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (cleaned up).

In addition to being adequately explained, Commerce's determination is also supported by substantial evidence. USW argues that Prinx attempted to prevent Commerce from calculating an accurate financial expense ratio by intentionally listing a company it knew operated in a non-market economy. USW Br. at 13, 15. But simply because Commerce eventually agreed with USW that it could not use ███████████ financial statements does not mean that Prinx intentionally misled Commerce or believed at the time it submitted the supplemental questionnaire response that the company operated in a non-market economy.

USW points to information on the record demonstrating that ███████████ operated in ████, but the existence of record evidence contradicting Prinx's position does not demonstrate that Prinx intentionally misled Commerce or otherwise failed to cooperate to the best of its ability. Moreover, while Commerce found, in its final determination, that ███████████ operated in a non-market economy country, it still observed that multiple pieces of record evidence supported the opposite position—namely, that the company was incorporated in ███ █████████████ and that it complied with ████████████████████████. Prinx Final Cost Calculation Memo at 2-3.

In its supplemental questionnaire, Commerce requested that Prinx provide the financial statements of the "company operating in a market economy that represents the highest level of consolidation." Prinx Supp. Section D Questionnaire at 9. Commerce's supplemental questionnaire did not, however, specify whether the revised financial statements from the consolidated company had to operate *only* in a market economy, or make clear that Commerce was aware that the parent company operated in █████. Nor did Commerce issue another deficiency notice to Prinx pursuant to 19 U.S.C. § 1677m(d). Prinx complied with Commerce's request, submitting a revised financial expense rate calculated based on the financial statements of ████████████, a company that arguably operated in a market economy, *i.e.*, ███ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████ *See* Prinx Rebuttal Br. at 25, Prinx Supp. Section D Resp. at 12 Exh. SD-12.b, Prinx Section A Resp. at Exh. A-6b-10_2. And Commerce reasonably found, based on the record, that Prinx had cooperated to the best of its ability, complying with Commerce's requests for information, timely providing the requested information in the form

and manner requested, and not significantly impeding Commerce's ability to timely and accurately conduct its investigation.  IDM at 41.  None of USW's arguments demonstrate that Commerce abused its broad discretion in declining to apply an adverse inference and instead relying on Prinx's own financial statements to calculate the financial expense ratio. Accordingly, this Court should sustain Commerce's final determination.

<b><u>CONCLUSION</u></b>

For these reasons, we respectfully request this Court deny USW's motion for judgment upon the agency record and enter judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

/s/ Sosun Bae

SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-7568
Fax: (202) 307-0972
Email: sosun.bae@usdoj.gov

AYAT MUJAIS
Assistant Chief Counsel
Office of the Chief Counsel
    for Trade Enforcement & Compliance
U.S. Department of Commerce

December 23, 2025

Attorneys for Defendant

14

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to this Court's August 5, 2025 order, defendant's counsel certifies that this brief

complies with the Court's type-volume limitations rules.  According to the word count calculated

by the Microsoft Word processing system used to prepare this brief, I certify that this brief

contains 3,870 words, excluding those exempted portions of this brief.

<u>/s/ Sosun Bae</u>

December 23, 2025

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to this Court's Administrative Order 25-01, defendant's counsel certifies that this confidential brief was served upon the parties on December 23, 2025, by encrypted electronic mail with password protection.

<u>/s/ Sosun Bae</u>

December 23, 2025