**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

|  |  |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, | |
| Plaintiff, | **Court No. 25-00004** |
| UNITED STATES, | **PUBLIC VERSION** |
| Defendant, | |
| v. | |
| PRINX CHENGSHAN TIRE (THAILAND) CO., LTD. and PRINX CHENGSHAN TIRE NORTH AMERICA, INC., | |
| Defendant-Intervenors. | |

**DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD PURSUANT TO USCIT RULE 56.2**

Ned H. Marshak*
Jordan C. Kahn
Brandon M. Petelin
Eve Q. Wang

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881
* 599 Lexington Ave. 36th Fl.
New York NY 10022
(212) 973-7759

*Counsel for Defendant-Intervenors Prinx Chengshan Tire (Thailand) Co., Ltd. and Prinx Chengshan Tire North America, Inc.*

Dated: February 6, 2026

## **TABLE OF CONTENTS**

I.      RECORD EVIDENCE CONFIRMS THAT PRINX COOPERATED TO THE BEST OF ITS ABILITY TO PROVIDE ALL INFORMATION REQUESTED ...................................... 1

II.     COMMERCE'S DECISION TO RELY ON FACTS AVAILABLE, WITHOUT AN ADVERSE INFERENCE, IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW ................................................................................................ 8

CONCLUSION ................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Administrative Decisions**

*Seamless Refined Copper Pipe and Tube from Mexico: Final Results of Antidumping Duty Administrative Review: 2012-2013*, 80 Fed. Reg. 33,482 (June 12, 2015)..................................................................................................................8

*Truck and Bus Tires from Thailand: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 89 Fed. Reg. 83,636 (Oct. 17, 2024)................................................1, 7

This Response Brief is filed on behalf of Defendant-Intervenors Prinx Chengshan Tire (Thailand) Co., Ltd. ("Prinx Thailand" or "PCT") and its U.S. affiliated reseller Prinx Chengshan Tire North America, Inc. (collectively, "Prinx"), in opposition to the Motion for Judgment on the Agency Record filed by Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("Petitioner") on October 3, 2025, ECF 32-33 ("Pl. Br."). Petitioner alleges that the U.S. Department of Commerce's ("Commerce") decision to apply neutral facts available – *without* an adverse inference – to Prinx Thailand for its financial expense ratio calculation is not supported by substantial evidence. *Id*. at 0.

Petitioner is wrong. Commerce's final decision to not apply partial adverse facts available ("AFA") to Prinx Thailand and instead to rely on its 2023 audited financial statement as the basis to calculate the financial expense ratio was supported by substantial evidence. *See Truck and Bus Tires from Thailand: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 89 Fed. Reg. 83,636 (Oct. 17, 2024), P.R. 297 ("*Final Determination*"), accompanying Issues and Decision Memorandum, P.R. 290 ("IDM"). Prinx supports the position of Defendant United States ("Defendant") in opposition to Plaintiff's arguments in Defendant's response brief filed on December 23, 2025, ECF 36-37 ("Def. Br."), at 1. In this Response Brief, Prinx supplements Defendant's arguments.

I. **RECORD EVIDENCE CONFIRMS THAT PRINX COOPERATED TO THE BEST OF ITS ABILITY TO PROVIDE ALL INFORMATION REQUESTED**

Petitioner claims that Prinx failed to cooperate to the best of its ability because it was "twice asked to report its interest expense and twice provided an expense calculated using the financial statements of nonmarket economy ('NME') entities, despite Commerce's explicit

1

instructions not to do so." Pl. Br. at 12-13; Petitioner's Case Brief (Sept. 16, 2024), C.R. 563, P.R. 277 ("Pet. Br"). at 38. Petitioner is wrong. Contrary to Petitioner's assertion, Prinx provided the information requested in the form and manner required and cooperated to the best of its ability by submitting complete and accurate responses to Commerce's questions.

In response to Commerce's initial Section D Questionnaire, Prinx reported its net interest expense ("INTEX"), one of the required fields for the cost of production, and provided a detailed calculation worksheet. Prinx Thailand Section D Questionnaire Response (Feb. 5, 2024), C.R. 178-96, P.R. 127 ("DQR"), at 30. Prinx noted that it was one of the consolidated Prinx group of companies and calculated the ratio based on the financial statement of its parent company [

]. *Id.*

Significantly, Commerce's initial Section D Questionnaire did not "explicitly" state that Prinx was required to use the financial statements of a market economy ("ME") entity to calculate the ratio. *See* U.S. Department of Commerce Questionnaire (Dec. 13, 2023), P.R. 78 at D-20 ("Report the per-unit net interest expense incurred by your company."). Rather, the questionnaire instructs that, if a respondent is part of a consolidated group, the respondent should calculate the ratio based on the consolidated financial statements that encompass the respondent:

> Provide a worksheet that demonstrates how you computed your company's net interest expense ratio. If your company is a member of a consolidated group of companies, calculate your financial expense based on the consolidated audited fiscal year financial statements of the highest consolidation level available.

*Id.* at D-15. Within the Prinx Group, its parent company [            ], who manufactures tires and whose financial expenses most resemble Prinx Thailand's, represented the highest consolidation level of tire manufacturing companies. Therefore, Prinx's initial calculation based on its parent company's financial statements in its initial response reasonably complied with Commerce's instructions.

2

PUBLIC VERSION

On April 3, 2024, Commerce, in a supplemental questionnaire, asked Prinx which company of the Prinx group operating in a ME represented the highest level of consolidation. U.S. Department of Commerce Prinx Thailand Section D Supplemental Questionnaire (Apr. 3, 2024), C.R. 331, P.R. 154. On April 22, 2024, Prinx followed Commerce's instructions and revised the ratio calculation using the financial statements of [

] a company Prinx identified as "operating in a market economy and represents the highest level of consolidation level with respect to the results of PCT" (*i.e.*, Prinx Thailand). Prinx Thailand Supplemental Section D Questionnaire Response, C.R. 358-86, P.R. 184 ("SDQR"), at 12. Prinx also provided a worksheet for the revised ratio calculation with detailed explanations to assist Commerce in tying the ratio calculation to the audited financial statements submitted, including steps, sources, and description of the data used. *Id.* at 12-13, Exhibit SD-12c.

On May 2, 2024, Petitioner filed comments in advance of Commerce's preliminary determination relating to the manner in which Prinx reported financial expenses in its SDQR. Petitioner Pre-Preliminary Comments on Prinx Chengshan's INTEX Calculation (May 2, 2024), C.R. 435, P.R. 202 ("Pet. Pre-Prelim Comments). Petitioner's comments were limited to the arithmetic calculation of the revised net interest ratio and did not question Prinx Thailand's representation that [            ] operated in a market economy. *Id.* at 4-5.[1]

---

[1] More specifically, Petitioner commented that the revised financial expense ratio should have been reported as a positive number, [      ], instead of a negative number [      ]. Pet. Pre-Prelim Comments at 4-5. Upon reviewing Petitioner's comments, Prinx Thailand promptly responded that Petitioner was correct about the sign of the revised financial expense ratio, confirming that Prinx Thailand made an inadvertent clerical error by reversing the signs of the financial expense data. *See* Prinx Response to Petitioner's Pre-Prelim Comments (May 6, 2024), C.R. 438, P.R. 206.

On July 10, 2024, Commerce sent Prinx Thailand an outline of its cost verification agenda to be conducted onsite from July 22-24, 2026, which included a review of the financial expenses reported by Prinx Thailand:

> Review the worksheet showing Prinx's calculation of the financial expense rate (*see* Exhibit SD-12.c of the supplemental section D questionnaire response dated April 22, 2024). Recalculate the per-unit financial expense amount and trace the amount to the financial expense reported in the cost database.

U.S. Department of Commerce Prinx Thailand Cost Verification Agenda (July 10, 2024), C.R. 528, P.R. 258, at 9. Petitioner did not comment on Commerce's cost verification agenda.

At verification, Commerce verified the completeness and accuracy of the underlying data and the calculation of the financial expense ratio. Commerce stated:

> We obtained and reviewed the worksheet showing Prinx's calculation of the financial expense rate at CVE 9 (also submitted at CVE 1). We traced the finance costs, net foreign exchange gains and losses, finance income, and COGS used to calculate the financial expense rate from the worksheet to [
>                     ] FY 2023 audited consolidated financial statements.

U.S. Department of Commerce Prinx Thailand Cost Verification Report (Sept. 11, 2024), C.R. 560, P.R. 21 at 16.

The foregoing summary of the record reveals that throughout this investigation, Prinx fully cooperated with respect to reporting financial expenses by submitting, upon request, what it believed to be a statement from a company operating in an ME, and revising its expenses in its SDQR. Commerce verified the data submitted and concluded that the data was complete and accurate. And Petitioner reviewed the financial statements submitted in the SDQR, and commented on Prinx's revised calculations, Pet. Pre-Prelim Comments at 2-5 – without questioning Prinx's representation that [              ] operates in an ME. Petitioner similarly did not comment on Commerce's verification outline, in which Commerce advised that it would review the financial expenses reported by Prinx.

4

PUBLIC VERSION

That Commerce and Petitioner accepted the [        ] financial statements is not surprising. Prinx's representation that [        ] is a company operating in an ME country at the highest consolidation level is supported by the record evidence, including:

1. the corporate structure of the Prinx group in a chart showing [        ] at several levels above Prinx Thailand (Exhibit A-2c-1 in AQR); and

2. the audited consolidated financial statements of [        ] confirming that

    a. it is [              ] incorporated in [              ];

    b. its subsidiaries are engaged in manufacturing and sales of tires products in [                                          ];

    c. its shares have been publicly listed on [              ];

    d. its consolidated financial statements are prepared in accordance with [                              ];

    e. its statements are in compliance with the disclosure requirements of the [                  ]; and

    f. in 2022 [              ] assets and revenue [    ] its [    ] assets and revenue; in 2023, its [        ] assets [    ] its [    ] assets and its [    ] revenue exceeded its [        ] revenue.

Prinx Section A Questionnaire Response (Jan. 17, 2024), C.R. 55-85, P.R. 94-99 ("AQR"), Exhibit A-6b-10; SDQR Exhibit SD12.b; Prinx Rebuttal Brief (Sept. 20, 2024), C.R. 564, P.R. 279, at 25-26.

Moreover, contrary to Petitioner's claim, the financial statements of [        ] do not state that its principal business operations are in [    ]. On the contrary, the audited statements provide that [        ] is an investment holding company and its "principal

5

activities" are "investment holding." See AQR Exhibit A-6b-10_1 at 45. Page 22 of the 2023 statement describes [          ] two business segments as follows.

[                                                                                              ]

SDQR Exhibit SD-12.b at 22.

Petitioner claims that [          ] is a [     ] entity because it [

]. Pl. Br. at 16. However, merely because the company [

], does not mean that it is an NME entity. [          ] is an investment holding company, whose shares have been publicly listed on [          ], whose consolidated financial statements are prepared in accordance with [

] in compliance with the disclosure requirements of the [

], and who had more assets outside of [     ] than in [     ] in 2022 and 2023.

In its Case Brief, submitted on September 16, 2024, Petitioner for the first time raised the issue subject to this Civil Action. Pet. Br. at 38-44. Petitioner argued that [          ] was not an ME company and that Commerce should calculate Prinx's financial expenses based on partial AFA because Prinx had claimed that [          ] was an ME company. Id. at 39.

6

In the *Final Determination*, Commerce split the baby. It decided not to rely on the [

] financial statements to calculate Prinx's financial expenses but declined to apply partial AFA for this expense.² IDM at 55-56. Commerce, as a general matter, found that Prinx cooperated with Commerce's numerous requests for information on numerous issues including the financial expense ratio:

> Prinx cooperated with Commerce's numerous requests for information, provided the requested information by the established deadlines in the form and manner requested, provided information that was largely verifiable, and did not significantly impede Commerce's ability to timely and accurately conduct this investigation so as to warrant { } application of total AFA.

IDM at 41; Def Br. at 12.

With respect to financial expenses, Commerce reaffirmed that Prinx timely submitted all information requested and that the calculation of financial expenses was verified during the cost verification. IDM at 56; Def. Br. at 6. Commerce explained that even though it decided not to rely on the financial statements of [                    ], it disagreed with Petitioner that Prinx "intentionally misled Commerce or believed at the time it submitted the supplemental questionnaire response that the company operated in a non-market economy." Def. Br. at 12. Commerce reasoned that the existence of record evidence contradicting Prinx's position does not mean it "misled Commerce or otherwise failed to cooperate to the best of its ability." *Id.* at 13. Furthermore, Commerce acknowledged that multiple pieces of record evidence supported Prinx's representation that [                    ] was a company operating in a market economy. *Id.*

---

²     Prinx disagrees with Commerce's decision to reject [                    ] consolidated financial statement as the basis for calculating Prinx's financial expenses. However, Prinx has not challenged this decision before this Court, and recognizes that this Court cannot revisit this issue at this time.

7

In sum, as the evidence summarized above confirms, Commerce's decision not to apply partial AFA when calculating Prinx Thailand's financial expense ratio was supported by substantial evidence and in accordance with law.

## II. COMMERCE'S DECISION TO RELY ON FACTS AVAILBLE, WITHOUT AN ADVERSE INFERENCE, IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW

Commerce ultimately determined that because [          ] operated in an ME and NME, Commerce could not rely on its financial statements. To fill a gap in the record, Commerce then applied facts available, without an adverse inference, and relied on Prinx Thailand's own financial statements to calculate the expense ratio. Commerce explained that using Prinx Thailand's financial statements was consistent with its relying on a producer-respondent's own financial statements in prior cases with similar fact patterns, citing *Seamless Refined Copper Pipe and Tube from Mexico: Final Results of Antidumping Duty Administrative Review: 2012-2013*, 80 Fed. Reg. 33,482 (June 12, 2015), accompanying IDM Comment 3. IDM at 56; D-Brief at 11.

The reasons why Commerce's decision to rely on neutral facts available, rather than adverse facts available, is supported by substantial evidence are discussed in detail above. Section I, *supra*. Prinx's responses to Commerce's questions were complete and accurate. Prinx's belief that [          ] statements could be used to calculate financial expenses because it was a "company operating in a market economy," SDQR at 12, was based on multiple, objectively reasonable facts and circumstances. These financial statements were accepted by Petitioner and Commerce throughout the investigation, and Prinx's calculation of financial expense ratios was verified by Commerce. Petitioner did not raise the issue as to whether [          ] was a market economy company until it filed its Case Brief – after the

8

record was closed. For all of these reasons, Commerce's decision to rely on neutral facts available, rather than adverse facts available, to calculate Prinx's financial expense ratios is supported by substantial evidence.

In its Response Brief, Defendant directs this Court's attention to multiple judicial decisions supporting Commerce's decision. Def. Br. at 10-12. None of the decisions upon which Petitioner relies support resorting to an adverse inference based on the facts and circumstances in this case. Moreover, as Defendant reasons, Commerce's IDM explains the reasons why Commerce's decision to reject reliance on AFA conformed to law. *Id*. at 9-14 (citing IDM Comments 3-4). Indeed, while Defendant correctly states that based on the facts in this case, Commerce has the discretionary authority not to apply partial AFA to these expenses, Prinx respectfully submits that reliance on partial AFA would have been unsupported by substantial evidence and contrary to law.

Finally, while not necessary for this Court to resolve the issue raised in this case, we believe that it is appropriate to comment on Petitioner's characterization of the record. Petitioner states that it "alert{ed} Commerce to Prinx's false claims" regarding [            ] financial statements in its case brief. Pet. Br. at 5. Yet if Prinx's claims were clearly false, why didn't Petitioner direct Commerce's attention to the alleged "falsity" five months earlier when Prinx responded to Commerce's questionnaire? The "indisputable and undeniable fact" that [

      ] consolidated financial statements included data for companies which operated in China and in market economy countries, Pl. Br. at 5, also was "well-known," *id*. at 13, to Commerce and Petitioner when Prinx advised Commerce that this company operated in an ME. In fact, contrary to Petitioner's implicit allegations, Prinx hid nothing in its questionnaire responses; Prinx's position that [              ] financial statements should be used to

9

calculate financial expense ratios reflected its analysis of all facts relating to the company – facts that were known to all parties.

Petitioner next claims that Prinx attempted a "gambit" and that its conduct was "egregious." *Id*. at 10. It claims that Prinx's submission of the [          ] financial statements "was a knowing attempt to prevent Commerce from calculating Prinx's financial expense ratio on a market economy basis." *Id*. at 15. It argues that Prinx's position "was in fact frivolous," *id*. at 17, that "Prinx knowingly flouted Commerce' instructions," *id*. at 19, and that Prinx's "contentions of accuracy" were "baseless." *Id*. at 20.

Petitioner's repeated use of strong language does not overcome its weak position. As discussed, Prinx hid nothing when it advised Commerce that [          ] was an ME company. The [          ] financial statements clearly stated that the company:

1. is [                    ] incorporated in [          ];

2. has subsidiaries engaged in manufacturing and sales of tires products in [          ];

3. is publicly listed on [       ];

4. prepares its consolidated financial statements in accordance with [          ];

5. has financial statements which comply with the disclosure requirements of [          ]; and

6. in 2022, had [       ] assets and revenue which [       ] its [       ] assets and revenue, and in 2023, had [       ] assets which [       ] its [       ] assets.

AQR Exhibit A-6b-10; SDQR Exhibit SD12.b; Prinx Rebuttal Brief at 25-26.

Prinx's reasonable belief that [          ] was a market economy company was based on these multiple objective facts. These facts were known to Petitioner and Commerce early in

the investigation, when Prinx responded to Commerce's Supplemental Section D Questionnaire. If Petitioner disagreed with Prinx's position, it had multiple opportunities – before the record closed – to ask that Commerce reject the [          ] statement. Instead, Petitioner did not raise this issue until it filed its Case Brief. And Petitioner in its Brief to this Court now claims that Prinx's conduct was "egregious" and that Prinx's claims are "frivolous" and "baseless." Pl. Br. at 10, 17, 20.

We are confident that this Court will reject Petitioner's inflammatory representations and will decide this case based on the evidence of record, in accordance with law.

## CONCLUSION

For the foregoing reasons, Defendant-Intervenor Prinx respectfully requests that this Court affirm Commerce's decision to rely on Prinx Thailand's own financial statements to calculate Prinx Thailand's financial expense ratio, and to reject Petitioner's argument that Commerce should rely on partial AFA in its calculation.

    Respectfully submitted,

    */s/ Eve Q. Wang*
    Ned H. Marshak
    Jordan C. Kahn
    Brandon M. Petelin
    Eve Q. Wang

    GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP

    1201 New York Ave., NW, Suite 650
    Washington, DC 20005
    (202) 783-6881

    * 599 Lexington Ave. 36th Fl.
    New York NY 10022
    (212) 973-7759

PUBLIC VERSION

                                                                                                          *Counsel for Defendant-Intervenors Prinx*
                                                                                                          *Chengshan Tire (Thailand) Co., Ltd. and*
Dated: February 6, 2026                                                           *Prinx Chengshan Tire North America, Inc.*

## **CERTIFICATE OF COMPLIANCE**

   Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenors' Response Brief, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2007, is 3,024 words, with an embedded graphic containing 163 words, for a total of 3,187 words, less than the 10,000 word limit.

              */s/ Eve Q. Wang*
              *Counsel for Defendant-Intervenors Prinx*
              *Chengshan Tire (Thailand) Co., Ltd. and*
              *Prinx Chengshan Tire North America, Inc.*

Dated: February 6, 2026

15129084_1