United States Court of International Trade
One Federal Plaza
New York, NY 10278



CHAMBERS OF
Gary S. Katzmann
JUDGE

March 19, 2026

*PUBLIC VERSION*

Luke A. Meisner
Schagrin Associates
900 7th St, N.W., Suite 500
Washington, D.C. 20001

Sosun Bae
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

Brandon M. Petelin
Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP
1201 New York Avenue, N.W., Suite 650
Washington, D.C. 20005

**Re:** **Questions for Oral Argument re: <u>United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC v. United States</u>**
**Court No.: 25-00004**

Dear Counselors:

Oral argument in this case will be held in the James L. Watson Courthouse on Wednesday, April 8, 2026, in Courtroom 1 at 2:00 p.m. The argument, if public and not closed, will be recorded and may be made available to the public via the court's website. If you will be requesting a closed argument or portions of the argument, please inform my case manager, Geoffrey Goell, by 5:00 p.m. on Wednesday, April 1, 2026. The court encourages the parties to maintain a public argument if possible.

Court No.: 25-00004                                                                                          Page 2
*PUBLIC VERSION*

  The court has reviewed Commerce's <u>Truck and Bus Tires From Thailand: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part</u>, 89 Fed. Reg. 83636 (Dep't Com. Oct. 17, 2024) ("<u>Final Determination</u>") and accompanying Mem. from K. Marksberry to S. Fullerton, re: Issues and Decision Memorandum (Dep't Com. Oct. 9, 2024) ("IDM") and the parties' briefing thereon. <u>See</u> Pl.'s Rule 56.2 Mot. for J. on the Agency R., Oct. 3, 2025, ECF No. 32 ("Pl.'s Br."); Def.'s Resp. to Pl.'s Mot. for J. Upon the Agency R., Dec. 23, 2025, ECF No. 36 ("Gov't Br."); Def.-Inters.' Resp. to Pl.'s Mot. for J. on the Agency R., Feb. 6, 2026, ECF No. 38 ("Def.-Inters.' Br."); [1] Pl.'s Reply Br. in Supp. of Mot. for J. on the Agency R., Mar. 6, 2026, ECF No. 40 ("Pl.'s Reply"). The court would like counsel to submit answers in writing to the court's questions by 5:00 p.m. on Wednesday, April 1, 2026. The questions should not be construed as suggesting that the court has made any conclusive determinations prior to argument. Parties shall file public and, if necessary, confidential versions of their answers, of not more than 3,000 words.

  The oral argument will be dedicated to rebuttal arguments to the answers filed by opposing counsel. The court will also permit but not require brief opening statements. The length of parties' presentations shall not exceed twenty-five (25) minutes for Plaintiff and twenty-five (25) minutes for Defendant and Defendant-Intervenors.

## I. **Questions for Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW")**

1. What factors does Commerce typically use to determine whether a company operates in a market economy?

  a. You argue that for a company to be considered a non-market entity, "it is enough for the company in question to 'operate' in a non-market economy." Pl.'s Br. at 16. Can a company with its principal place of business in a non-market economy ever be considered to operate in a market economy?

2. Commerce considered factors that supported Prinx's contention that Company Y operates in a market economy, even though it ultimately determined that Company Y's financial statement could not serve as the basis for Prinx's financial expense ratio calculation. <u>See</u> Mem. from C. Winfield to S. Arthur, re: Cost of Production and Constructed Value Calculation Adjustments for the Final Determination – Prinx Chengshan Tire (Thailand) Co., Ltd. at 2–3, Case No. A-549-848, Bar Code: 4646693-01 (Dep't Com. Oct. 9, 2024) ("Final Cost Calculation Mem."). Does Commerce's consideration of these factors cast

---

[1] Four Prinx entities are involved in the instant case. Two— Prinx Chengshan Tire (Thailand) Co., Ltd. ("Prinx Thailand") and Prinx Chengshan Tire North America, Inc.—are the Defendant-Intervenors in the action before this court (collectively, "Prinx"). The others, [[            ]] ("Company X") and [[            ]] ("Company Y"), are companies at higher levels of consolidation within Prinx's corporate structure.

doubt on your claim that "a party that 'cooperated to the best of its ability' would never have provided [Company Y's] information"?   Pl.'s Br. at 14 (quoting 19 U.S.C. § 1677e(b)).

3. You state that Commerce's discretion to apply an adverse inference "depended on the agency's antecedent finding that 'Prinx cooperated to the best of its ability to provide the information requested.' "  Pl.'s Reply at 2 (quoting IDM at 41).  What part of the record supports your position that Commerce's exercise of discretion, in this instance, depended on a determination that Prinx cooperated?

   a. Do you dispute that Commerce has discretion to not apply an adverse inference in the absence of a finding that a party cooperated to the best of its ability?  See Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, 47 CIT __, __, 624 F. Supp. 3d 1343, 1377 (2023) ("Commerce could have declined to apply adverse facts available even if it had affirmatively found that Assan failed to act to the best of its ability." (emphasis in original)).

4. 19 U.S.C. § 1677e(b)(1) states that "if [Commerce] . . . finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," then Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  19 U.S.C. § 1677e(b)(1).  Is Commerce required by the statute to make a determination as to whether a party has cooperated to the best of its ability, even if it does not intend to apply an adverse inference?

5. Commerce explained that "for the majority of Prinx's submissions, the record demonstrates that Prinx cooperated with Commerce's numerous requests for information, provided the requested information by the established deadlines in the form and manner requested, provided information that was largely verifiable, and did not significantly impede Commerce's ability to timely and accurately conduct this investigation . . . ."  IDM at 41.  You note that this explanation pertains to Commerce's determination to not apply a total adverse inference, not Commerce's determination to not apply a partial adverse inference to the financial expense ratio.  See Pl.'s Reply at 4.  Nonetheless, please explain why Commerce's rational is not reasonably discernable based on its explanation that Prinx cooperated on the whole, "[a]side from" specific issues addressed elsewhere in the IDM that merited application of a partial adverse inference.  See IDM at 41; see also Wheatland Tube Co. v. United States, 161 F.3d 1365, 1369–70 (Fed. Cir. 1998).

6. You proposed that Commerce use as adverse facts available a financial expense ratio double the rate Commerce had calculated for Bridgestone.  See Letter from L. Meisner to G. Raimondo, re: Truck and Bus Tires from Thailand – Petitioner's Case Brief at 43–44,

Case No. A-549-848, Bar Code: 4632590-01 (Sep. 16, 2024) ("USW Case Brief"). Commerce's IDM, however, explains in detail its final determination that Bridgestone's data is unreliable. See, e.g., IDM at 37 ("[T]he level of inattentiveness and inaccuracy of Bridgestone's reporting throughout the proceeding undermines the reliability of the company's responses as a whole."). Is Commerce's description of Bridgestone's data a reasonably discernable justification for not using an adverse inference based on the financial expense ratio calculated for Bridgestone? See Wheatland, 161 F.3d at 1369–70.

7. What cases and authorities best support your argument?

8. Are there any recent or pending Federal Circuit or the United States Court of International Trade ("USCIT") cases that may affect the court's analysis?

## II. Questions for Defendant United States ("the Government")

1. What factors does Commerce typically use to determine whether a company operates in a market economy?

   a. USW argues that for a company to be considered a non-market entity, "it is enough for the company in question to 'operate' in a non-market economy." Pl.'s Br. at 16. Can a company with its principal place of business in a non-market economy ever be considered to operate in a market economy?

2. You argue that "Commerce . . . identified record information supporting Prinx's position" that Company Y operated in a market economy. See Gov't Br. at 11. Please respond to USW's argument that Commerce's rejection of Company X's financial information should have made it clear to Prinx that Commerce would not rely on data from a company based in a non-market economy, even if it has market economy operations. Pl.'s Reply at 9–10.

   a. You also argue that the fact that "Commerce eventually agreed with USW that it could not use [Company Y's] financial statements does not mean that Prinx intentionally misled Commerce . . . ." Gov't Br. at 12. Please respond to USW's argument that there is no intent requirement for applying adverse inferences. Pl.'s Reply at 8–9 (citing Nippon Steel Corp. v. United States, 337 F.3d 1373, 1383 (Fed. Cir. 2003)).

3. You reference Commerce's determination that "other than with regard to a few discrete issues for which Commerce applied partial [adverse facts available,] 'Prinx cooperated with Commerce's numerous requests for information . . . ' " in support of your position that Commerce adequately explained its decision to not apply a partial adverse inference to Prinx's financial expense ratio. Gov't Br. at 5 (quoting IDM at 41). Please respond to

USW's argument that this explanation is for "a separate determination" and is insufficient to address "the discrete issue that [USW] raised."  Pl.'s Reply at 4.

4. In multiple sections of the IDM, Commerce separately addresses (1) whether to apply an adverse inference and (2) what inference to apply.  See IDM at 49, 51 (agreeing with USW that an adverse inference should be applied and rejecting USW's proposed adjustment).  If an interested party argues for a specific adverse inference, must Commerce both address whether an adverse inference is warranted and whether the specific adverse inference is appropriate?

   a. Where on the record did Commerce explain its response to USW's arguments (1) that Prinx failed to cooperate with respect to reporting its financial expense ratio, (2) that Commerce should apply partial adverse facts available, and (3) that the adverse inference applied should be twice the preliminary financial expense ratio calculated for Bridgestone?  See USW Case Brief at 43–44.

5. You note that Commerce cited its past practice to support using Prinx Thailand's own financial statements for the financial expense ratio.  Gov't Br. at 11–12; see also Def.-Inters.' Br. at 8.  The Federal Circuit has stated that an "agency's statement of what it 'normally' does or has done before . . . is not, by itself, an explanation of 'why its methodology comports with the statute.' "  Mid Continent Steel & Wire, Inc. v. United States, 941 F.3d 530, 537–38 (Fed. Cir. 2019) (quoting CS Wind Viet. Co. v. United States, 832 F.3d 1367, 1377 (Fed. Cir. 2016)).  Please explain how Commerce's explanation for why it chose to use Prinx Thailand's 2023 FY financial statements satisfies the requirements of Mid Continent.

6. Please respond to USW's argument that Commerce's explanation of its determination "did not meet the standard required by Assan Aluminyum and Tianjin Magnesium."  See Pl.'s Br. at 19 (citing Assan Aluminyum, 624 F. Supp. 3d at 1377–78 and then citing Tianjin Magnesium Int'l Co. v. United States, 36 CIT 683, 689, 844 F. Supp. 2d 1342, 1347 (2012)).

7. This court may not sustain a determination based on reasoning not provided by Commerce.  See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).  You note that "Commerce's supplemental questionnaire did not . . . specify whether the revised financial statements from the consolidated company had to operate only in a market economy."  Gov't Br. at 13 (emphasis in original).  Please respond to USW's argument that this is a post hoc rationalization.  See Pl.'s Reply at 9.

8. You argue that "Commerce's broad discretion as to whether to apply an adverse inference 'does not require that [it] show that an [interested party] cooperated to the best of its ability every time it determines that [facts available with an adverse inference] should not be applied.' " Gov't Br. at 11 (quoting Appvion, Inc. v. United States, 39 CIT __, __, 100 F. Supp. 3d 1374, 1382 (2015) (alteration in original)). Did Commerce rely on its discretion—as opposed to a determination that Prinx cooperated to the best of its ability with regard to the financial expense ratio—as the reason to not apply an adverse inference? Where on the record did Commerce explain that it was relying on its discretion? See State Farm, 332 U.S. at 196.

9. What cases and authorities best support your argument?

10. Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?

III. **Questions for Defendant-Intervenor Prinx Chengshan Tire (Thailand) Co., Ltd. ("Prinx")**

1. What factors does Commerce typically use to determine whether a company operates in a market economy?

   a. USW argues that for a company to be considered a non-market entity, "it is enough for the company in question to 'operate' in a non-market economy." Pl.'s Br. at 16. Can a company with its principal place of business in a non-market economy ever be considered to operate in a market economy?

2. You argue that "the financial statements of [Company Y] do not state that its principal business operations are in" a non-market economy. Def.-Inters.' Br. at 5. Do you dispute Commerce's determinations—based on the financial statements of one of Company Y's affiliates—that Company Y's "principal place of business" is in a non-market economy and that Company Y "operates" in a non-market economy? Final Cost Calculation Mem. at 2–3; see also Pl.'s Reply at 6.

3. Please respond to USW's argument that Commerce's rejection of Company X's financial information should have made it clear to Prinx that Commerce would not rely on data from a company based in a nonmarket economy, even if it has market economy operations. Pl.'s Reply at 9–10.

4. You reference Commerce's determination that "Prinx cooperated with Commerce's numerous requests for information" in support of your position that Commerce adequately explained its decision to not apply a partial adverse inference to Prinx's financial expense

ratio.  Def.-Inters.' Br. at 7 (quoting IDM at 41).  Please respond to USW's argument that this explanation is for "a separate determination" and insufficient to address "the discrete issue that [USW] raised."  Pl.'s Reply at 4.

5.  You note that Commerce cited its past practice to support using Prinx Thailand's own financial statements for the financial expense ratio.  Def.-Inters.' Br. at 8; see also Gov't Br. at 11–12.  The Federal Circuit has stated that an "agency's statement of what it 'normally' does or has done before . . . is not, by itself, an explanation of 'why its methodology comports with the statute.' "  Mid Continent, 941 F.3d at 537–38 (quoting CS Wind, 832 F.3d at 1377).  Please explain how Commerce's explanation for why it chose to use Prinx Thailand's 2023 FY financial statements satisfies the requirements of Mid Continent.

6.  Please respond to USW's argument that Commerce's explanation of its determination "did not meet the standard required by Assan Aluminyum and Tianjin Magnesium."  See Pl.'s Br. at 17–19 (citing Assan Aluminyum, 624 F. Supp. 3d at 1377–78 and then citing Tianjin Magnesium, 36 CIT at 689, 844 F. Supp. 2d at 1347).

7.  What cases and authorities best support your argument?

8.  Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?

Sincerely,

*/s/ Gary S. Katzmann*
Gary S. Katzmann
Judge
